UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: } | | |
| KYLE BRADFORD MITCHELL } | Case No. 25-40081-JJR13 | |
| CORIE SHELBY MITCHELL } | | |
| Debtor(s). } | Chapter 13 | |

| | | |
|---|---|---|
| CORIE SHELBY MITCHELL } | | |
| } | | |
| PLAINTIFF } | | |
| } | | |
| VS. } | ADVERSARY PROCEEDING | |
| } | | |
| DR. MINIYAR'S PEDIATRICS, P.C., } | | |
| } | | |
| DEFENDANT } | | |

## ADVERSARY COMPLAINT

Comes now Joint Debtor Corie Shelby Mitchell ("the Employee" or "the Plaintiff") in the above-styled Chapter 13 bankruptcy case, and files this Adversary Complaint against Dr. Miniyar's Pediatrics, P.C. ("the Practice" or "the Defendant"), seeking an order and judgment declaring the liquidated damages provisions of the parties' Employment Agreement dated September 13, 2023 ("the Agreement") to be an unenforceable penalty under Ga. Code Ann. § 13-6-7 and *Gwinnett Clinic, Ltd. v. Boates*, 340 Ga. App. 598, 798 S.E. 2d 110 (2017); declaring the Plaintiff's resignation letter dated July 31, 2025, to be a valid notice of termination with cause; awarding Plaintiff all sums paid to the Trustee under the Agreed Order entered on September 4, 2025; granting Plaintiff's Contest of Claim #13 and disallowing Defendant's unsecured claim for $97,301.00 in its entirety; and awarding Plaintiff her reasonable attorney fees and other expenses for having to enforce her rights and the Defendant's obligations under the Agreement. As grounds therefore, Plaintiff

1

avers as follows:

1. On January 21, 2026, Plaintiff and her husband filed for an Order for Relief under Chapter 7 of Title 11, United States Code. (Doc. 1). This case was converted by the Debtors from a case under Chapter 7 to a pending case under Chapter 13 on July 15, 2025. (Doc. 49).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157, 11 U.S.C. § 502, 11 U.S.C. § 1303, 11 U.S.C. §§ 363(b), (d), (e), (f), and (l), and Bankruptcy Rules 7001 et seq. This is an action arising in or related to the bankruptcy case. This is a core proceeding.

3. Plaintiff was employed by the Practice as a nurse practitioner, a position she started in September, 2023. The terms of her employment are detailed in an Employment Agreement ("the Agreement") executed by the parties on or about September 13, 2023. Paragraph 4 of the Agreement provides that Plaintiff shall have a base salary of $95,000.00 per annum, payable bi-weekly.

4. On July 31, 2025, Plaintiff notified the Practice that she intended to resign with cause, effective October 29, 2025, citing the 90-day notice period detailed in the Agreement. On August 14, 2025, the Practice filed a Motion for Relief from the Automatic Stay, asking this Court for leave to terminate the Employee's employment for cause before that date. (Doc. 74). On September 4, 2025, an Agreed Order was entered modifying the stay to permit the Practice to terminate the Agreement effective as of August 21, 2025. (Doc. 86). Pursuant to that Order, the Practice has paid the Chapter 13 Trustee all amounts that would ordinarily be owed to the Employee for the time period beginning on August 22, 2025, and ending on October 29, 2025. The Chapter 13 Trustee is holding those funds pending further orders by the Court.

5. Under the Agreed Order, the Practice retains all claims that it may have against the Plaintiff, and the Plaintiff retains all claims that she may have against the Practice. No determination was made by the Court at that time regarding the merits of the Parties' claims against each other. Instead, the Practice and the Plaintiff were permitted to seek a determination on the merits through the claims adjudication process; through the filing of an adversary proceeding by either Party against the other; or through such other means or procedures authorized by the Court.

6. On September 22, 2025, the Practice filed an unsecured claim for $97,301.00 in the Plaintiff's bankruptcy case. (Claim #13). In its Proof of Claim the Practice itemized its total claim as follows:

| Claim Itemization | Amount | Support |
|---|---|---|
| Amounts Paid to the Trustee | $18,340.00 | Agreed Order; Salary between August 22, 2025 and October 29, 2025 |
| Signing Bonus (return) | $2,000.00 | Employment Agreement, § 5(f) |
| Damages for Failure to Complete 4-Year Term | $33,950.00 | Employment Agreement, § 7(b) |
| Damages for Failure to Complete 120-Day Notice Requirement | $24,250.00 | Employment Agreement, § 7(b) |
| Post-petition Legal Fees Incurred in Connection with Enforcement of the Employment Contract Terms | $18,761.00 | Employment Agreement, § 9(j) |
| TOTAL CLAIM | $97,301.00 | |

7. Plaintiff has filed this Adversary Proceeding and a Contest of Claim #13 seeking a determination of all disputed issues on the merits.

3

8. Plaintiff is identified as the "Provider" in the Agreement. Paragraph 7(a) gives the Provider a right to terminate the Agreement with cause "upon ninety (90) days written notice to Practice if this Agreement is breached by the Practice and the breach remains uncured for a period of thirty (30) days after written notice of the breach is delivered by Provider to the President [Dr. Miniyar]."

9. Beginning on or about June 17, 2025, Plaintiff sent Dr. Miniyar multiple text messages to notify him of her claim of breach and demand for cure. Although the Agreement states that "[i]n any written notice of breach Provider is responsible to provide clear, comprehensive, and objective proof that the Practice has indeed breached the Agreement," Dr. Miniyar agreed to a series of face-to-face meetings with the Employee during June, in which Plaintiff provided the Practice with clear, comprehensive, and objective proof of the Defendant's breach and her demands for cure. However, the Practice failed to cure its breach within those thirty days.

10. The Employee's notice of termination delivered to the Practice on July 31, 2025, was for good cause, and she gave the required 90-day notice.[1] The funds held by the Trustee under the Agreed Order rightly belong to Plaintiff, and the damages prayed for in Defendant's Claim #13, including the $2,000.00 signing bonus (see numbered paragraphs infra), should be denied in its entirety. In the alternative, Plaintiff avers that the liquidated damages provisions of the Agreement are an unenforceable penalty under Ga. Code Ann. § 13-6-7 and *Gwinnett Clinic, Ltd. v. Boates*, 340 Ga. App. 598, 798 S.E. 2d 110 (2017).

11. Paragraph 7(b) gives the Provider the right to terminate the Agreement without cause

---

[1] The Plaintiff's notice of termination concerns and contains private and confidential information regarding the Practice and its patients, and is therefore is not discussed in detail or attached to this Complaint as an exhibit.

upon 120 days written notice, for any reason other than the Practice's breach of the Agreement. However, paragraph 7(b) also provides that failure to complete the minimum four full years of employment term and/or failure to give the minimum 120 days' notice without cause "will result in substantial liquidated damages to the practice and the provider will be responsible to pay to the practice such liquidated damages." If the provider fails to give the minimum 120 days' notice, then the liquidated damages will be equal to a total of four months of provider's average monthly production amount in the past 12 months preceding the last day of the employment. If the Provider does not complete the four year term of the employment for any reason, including but not limited to with cause termination by the practice and without cause termination by the provider, the liquidated damages specified by paragraph 7(b) will be equal to 40% of the total monetary value of the compensation and benefits received by the providers in the preceding 12 months from the last day of the employment, plus total recruitment expense spent by the practice to hire the provider.[2] If the Provider breaches both the 120 days' notice requirement and the four years term commitment obligation, then the provider will be responsible for both types of those liquidated damages.

12. Paragraph 5(F) provides that a signing bonus of $2,000.00 will be given to the Provider on the Employment Date, and that the Provider will pay the entire amount of $2,000.00 to the practice, no later than 30 days before the last date of employment, if the provider leaves the practice for any reason whatsoever, with or without cause, before the four years contract term and the commitment for the full time employment is over.

13. Paragraph 7(b) states that the Provider understands that the process of recruiting a new

---

[2] This percentage amount of total compensation and benefit which is used to calculate the liquidated damages will go down by 5% for every full employment year completed by the provider (40% year one, 35% year two, 30% year three and 25% of year four).

5

Case 25-40014-JJR    Doc 1    Filed 11/19/25    Entered 11/19/25 20:55:57    Desc Main
Document      Page 5 of 11

provider and ensuring a new provider is fully credentialed with all major insurance companies takes approximately twelve months minimum. It further states that the provider acknowledges that the damages for failure to complete the minimum four full years of employment term and/or failure to give the minimum 120 days' notice for the termination of employment without cause will hurt legitimate business interests of the practice including but not limited to: shortage of available patient appointment slots, loss of revenue, shortage of available provider staff, decrease in the patient volume, extra stress on other providers and general staff, adverse effect on patient satisfaction and practice's reputation adverse effect on staff's morale, financial loss due to continuation of practice's fixed overhead expenses even after provider untimely stops performing duties.

14. Paragraph 7(b) states that each of the parties agrees that the payments prescribed for liquidated damages in paragraph 7(b) constitute liquidated damages and are not a penalty, and are a reasonable estimate of the damages to be suffered by the Practice. The Provider declares that she has participated in the negotiations of, and has read and considered, the foregoing liquidated damages provisions, and agrees that same are fair, reasonable, and reasonably necessary for the protection of one or more legitimate interests of the Practice. The Provider also acknowledges that she has received good and adequate consideration to support those liquidated damages provisions, which are "a fundamental part of the Practice's willingness to employ Provider and enter into this Agreement." The provisions of Paragraph 5(F) for repayment of the $2,000.00 signing bonus if the Provider leaves the practice (with or without cause) do not include such statements, agreements, or understandings.

15. Georgia law allows parties to provide for liquidated damages in their contracts, and unless the provision violates some principle of law, the parties are bound their agreement. A

liquidated damages clause is enforceable if (1) the injury caused by the breach of the contract is difficult or impossible to accurately estimate; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated upon by the parties is a reasonable pre-estimate of the probable loss. See OCGA § 13-6-7; *Gwinnett Clinic, Ltd. v. Boates*, 340 Ga. App. 598, 798 S.E. 2d 110 (2017). The burden on the defaulting party is to show the provision is a penalty, and the defaulting party can carry this burden by proving any of the three factors is lacking. *Id.*

16. In *Gwinnett Clinic, Ltd. v. Boates,* the evidence presented showed that in the summer of 2014, Boaten discussed employment as a physician with the Clinic, which sent her a copy of its standard employment contract to review. That contract contained a clause, titled "Liquidated Damages," that pertinently provided:

> Employer and Employee acknowledge that the actual damages in the event of a breach by either party to this Agreement will be impractical and extremely difficult to ascertain, that the liquidated damages set forth herein represent Employer and Employee's best estimate of such damages, and that Employer and Employee believe such liquidated damages are a reasonable estimate of such damages. Employer and Employee expressly acknowledge that the foregoing liquidated damages are intended not as a penalty, but as full liquidated damages, as permitted by O.C.G.A. § 13-6-7, in the event of breach of this Agreement and as compensation for the non-breaching party's inability to further rely upon the benefits of this Agreement for the remainder of its terms as determined by the date of the breach.
>
> If either party breaches the Agreement and fails to honor the Agreement to commence the Employment or terminates the Employment Agreement with an effective date prior to the completion of Employee's third Employment Year, the liquidated damages shall be $75,000.00 (equal to six months salary of Employee's First Year Salary, i.e., $151,000.00), payable by the party breaching/terminating the Agreement, without cause, to the other party.

*Id.* at 599-600. On August 15, 2014, Boaten met with the Clinic's president, Dr. J.J. Shah, and they negotiated the length of the term of employment but did not discuss the liquidated damages provision or engage in any specific negotiations related to it. Boaten subsequently accepted an offer to work

7

for a different employer. She did not report for work at the Clinic on her contracted start date.

17. The trial court in *Gwinnett Clinic, Ltd. v. Boates* found that the evidence presented satisfied the first prong of the tripartite inquiry (an injury that is difficult or impossible to accurately estimate), but not the second prong (the parties intended to provide for damages rather than a penalty) or the third prong (the stipulated sum is a reasonable pre-estimate of the probable loss). As a result the trial court concluded that the contract's liquidated damages provision was an unenforceable penalty. The trial court's finding as to the first prong was not at issue on appeal. The Court of Appeals agreed with the trial court about the third prong, and so did not decide about the second prong. *Id.* at 600-601.

18. The Court of Appeals found no evidence had been presented that tied the contract's stipulated sum–a half-year's salary–to the probable loss of either party upon the other party's breach. The provision at issue stipulated a single, unvarying sum as liquidated damages. It required this single amount to be paid regardless of which party breached the employment agreement and regardless of what point during the term of employment the breach occurred. Under the liquidated damages provision, an employee who did not work the full contractual term would have to pay the employer a half-year's salary whether she worked all but one day of the contractual period or did not work a single day. Likewise, the employer who fired an employee without cause would have to pay the employee a half-year's salary whether it fired the employee at the outset of the contractual period or one day before that period expired. The provision required payment of a half-year's salary whether or not the abandoned employer found another worker or the fired employee found another job. Consequently, the Court ruled, the provision at issue provided the non-breaching party with payment potentially bearing no reasonable relation to actual damages. *Id.* at 601-602.

8

19. As in the Georgia case discussed above, the damages specified under paragraph 7(b) for not completing the four year term of Plaintiff's employment for any reason, including but not limited to "with cause" termination by the Practice and "without cause" termination by the Provider, requires the SAME AMOUNT to be paid, regardless of which party breached the employment agreement. Unlike the liquidated damages provisions in the Georgia case, the percentage amount of the Provider's total compensation and benefit which is used to calculate the liquidated damages does go down by 5% for every full employment year completed by the provider (40% year one, 35% year two, 30% year three and 25% of year four). However, the diminishing percentage of the Provider's total compensation and benefits applicable to the liquidated damages formula as time goes by, for breach by either party of the four years term commitment obligation, remains the SAME AMOUNT-- whether or not the abandoned employer finds another worker or the fired employee finds another job! Consequently, this Court should similarly rule the liquidated damages provisions for breach of Plaintiff's four years term commitment obligation to be an unenforceable penalty (in that its terms also potentially bear no reasonable relation to the Defendant's actual damages). Accord, *Gwinnett Clinic, Ltd. v. Boates* . at 601-602.[3]

20. The liquidated damages provision which would apply to the Plaintiff's failure to give the minimum 120 days' notice required for termination without cause (four months of the Provider's average monthly production amount in the past 12 months preceding the last day of the employment)

---

[3] The use of the PROVIDER'S annual compensation and benefits as a yardstick for measuring the Practice's estimated loss from the Provider's breach, and not the PRACTICE'S estimated lost production or lost revenues, is also "apples and bananas" in that only the Practice's estimated lost production or lost revenues would be relevant to reasonably calculating any actual lost revenues resulting from the Plaintiff's breach (not what they should NOT have to pay the Plaintiff).

is also an unenforceable penalty under *Gwinnett*. A Provider who fails to give the Practice the full 120 days' notice under paragraph 7(b) would owe the Practice four months of her average monthly production, whether she gave 89 days or just 1 day's notice prior to resigning. *Gwinnett's* holding, which found a liquidated damages provision requiring the employee to pay his abandoned employer a half-year's salary–whether he worked all but one day of the contractual period or did not work a single day–to be an unenforceable penalty. The stipulated sum in paragraph 7(b) is also not a reasonable pre-estimate of probable loss. It too is an unenforceable penalty.

21. Notwithstanding the acknowledgments given by Plaintiff in paragraph 7(b), Plaintiff denies that the parties intended that the liquidated damages provisions of that paragraph actually provide for damages and not a penalty. Also, there were no negotiations between the Plaintiff and Defendant over the liquidated damages provisions in paragraph 7(b). Defendant required the Plaintiff and all its nurse practitioners to sign the same Agreement.

22. Plaintiff asks this Court to also rule that the provisions of paragraph 5(F) for repayment of the $2,000.00 signing bonus if the Provider leaves the practice (with or without cause) fail to satisfy the first, second, or third prongs of OCGA § 13-6-7(2). Paragraph 5(F) conveys no understanding or agreement that any injury caused by Plaintiff leaving the Practice early would be difficult or impossible to accurately estimate. Plaintiff also denies that paragraph 5(F) was intended by the parties to provide for damages rather than a penalty (it even applies if Plaintiff terminates for cause). Plaintiff further contends that having to return the full $2,000.00 signing bonus--whether she left three years or just three days before the Agreement's four year term expired–is also an unenforceable penalty under *Gwinnett*.

23. Paragraph 9(j) provides that in the event of any breach of the Agreement by either party,

if the non-breaching party should employ attorneys or incur other expenses for the enforcement of any provision herein or any obligation or agreement of the breaching party contained herein, the breaching party agrees that, on demand and to the extent permitted by law, the breaching party shall reimburse the non-breaching party for its reasonable attorney's fees and other such expenses so incurred plus 1.89 percent per month interest on that amount. The Plaintiff also asks this Court to award her reasonable attorney fees and other expenses for having to defend/enforce her rights and the Defendant's obligations under the Agreement.

WHEREFORE, Plaintiff prays the Court will enter a judgment declaring that the liquidated damages provisions of the Agreement to be an unenforceable penalty under Ga. Code Ann. § 13-6-7 and *Gwinnett Clinic, Ltd. v. Boates*; declaring the Plaintiff's resignation letter dated July 31, 2025, to be a valid notice of termination with cause; awarding Plaintiff all sums paid to the Trustee under the Agreed Order entered on September 4, 2025; granting Plaintiff's Contest of Claim #13 and disallowing Defendant's unsecured claim for $97,301.00 in its entirety; and awarding Plaintiff her reasonable attorney fees and other expenses for having to defend/enforce her rights and the Defendant's obligations under the Agreement.

                **s/ Ralph K. Strawn, Jr.**
                **RALPH K. STRAWN, JR.**
                **ATTORNEY FOR PLAINTIFF**

**OF COUNSEL:**
**STRAWN & ROBERTSON, LLC**
2401 Rainbow Drive
Gadsden, Alabama 35901
Tel: (256)459-4548
Fax: (256)459-4435
email: rstrawn@srlawfirm.comcastbiz.net